[Dkt. Nos. 18 and 20]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

MICHAEL J. VAN ALLEN,

    Plaintiff,

v.

PRINT ART INC.,

    Defendant.

Civil No. 15-5983 (RMB/AMD)

**OPINION**

Plaintiff Michael Van Allen ("Plaintiff") filed the within action against Defendant Print Art Inc., d/b/a Omega High Impact Print Solutions ("Defendant"), alleging violations of the Family and Medical Leave Act ("FMLA") and the New Jersey Law Against Discrimination ("NJLAD"). Specifically, Plaintiff asserts that Defendant violated the FMLA when, in January 2014, Defendant failed to provide Plaintiff the FMLA-mandated notification of his right to take a job-protected leave in response to his notice that he was suffering from a serious medical condition. Plaintiff further asserts that Defendant then failed to designate Plaintiff's FMLA-qualifying absences as same, and instead fired Plaintiff due to his absences which were FMLA-protected and NJLAD-qualifying.

Defendant has filed a Motion for Summary Judgment [Dkt. No. 18] asserting that Plaintiff's FMLA claims and NJLAD claims must

fail because the medical condition suffered by Plaintiff in January 2014 did not constitute a serious health condition under the FMLA or a disability under NJLAD.  Furthermore, Defendant asserts that it did not deny Plaintiff any benefits under the FMLA because Plaintiff failed to provide adequate notice to Defendant that he was suffering from a potentially FMLA-qualifying condition.  Plaintiff has disputed these arguments, and in addition to filing an opposition to Defendant's Motion for Summary Judgment, Plaintiff has also cross-moved for partial summary judgment [Dkt. No. 20].[1]  For the reasons set forth below, both motions are denied.

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it will "affect the outcome of the suit under the governing law . . . ."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party."  Id.  When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence: all reasonable "inferences,

---

[1] Defendant did not file an opposition to Plaintiff's motion, nor did Defendant file a reply brief in regard to its own motion.

doubts, and issues of credibility should be resolved against the moving party." Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983).

Defendant is in the business of providing commercial printing, art, and advertising for clients all along the East Coast of the United States. Def.'s Statement of Undisputed Facts ("DSUF") ¶ 2. On November 20, 2013, Defendant hired Plaintiff as a warehouse worker and delivery driver. Id. Plaintiff's job responsibilities required him to stage, load, deliver, and document all products scheduled for delivery on a daily basis for Defendant. Given this nature of employment, Plaintiff was also required to have a clean driving history. Id. ¶ 3.

Defendant's employee attendance policy expressly stated excessive call-outs from work would result in employee discipline. Excessive call-outs are defined as three (3) or more unscheduled absences from work during a sixty (60) day period. Id. ¶ 5. Between January 1, 2015 and January 21, 2015 (Plaintiff's termination date), Plaintiff had a total of five (5) unscheduled call-outs from work. Id. ¶ 6.

Plaintiff avers that on January 19, 2015, he began to "suffer from a serious rash appearing on his arms, neck, and back." Plaintiff's Counterstatement of Material Facts ("CSMF"), ¶ 33. On that day, at 5:08 a.m., Plaintiff sent a text to his

3

supervisor, Joseph Fernandez, stating "Joe, my son has off of school for the MLK holiday. I am going to take the day, to spend it with him, and drive him home – as he stayed the extra night with me. I will be in tomorrow at 7 a.m." DSUF ¶ 13. The next day, January 20, 2015, at 5:40 a.m., Plaintiff sent a text message to Fernandez stating, "Joe, I tried to leave you a voicemail, but the system wouldn't allow it. I had a family emergency last night and got no sleep. I will have to use another pto day unfortunately . . . so I can get some rest. You can call me if you'd like, otherwise I will be in tomorrow." Id. ¶ 36. As is evident from the texts, Plaintiff did not mention a rash in either text.

During the course of the day on January 20, 2015, Plaintiff contends that he attempted to seek medical attention for his medical condition. Id. ¶ 37. Plaintiff was able to secure an appointment at MedCom with a new physician on Wednesday, January 21, 2015. Id. ¶ 38.

Later, on the same day, January 20, 2015, at 1:30 p.m., Plaintiff sent a text message to Fernandez stating, in part, "Joe, I tried to get an emergency apt. with my doctor, however, she is on vacation. I broke out in rashes all over my arms, eyes, neck. It has caused me to lose sleep from intense itching. I have an apt with her the week I'm on vacation to address this & my sleep apnea/breathing. Until then I'll have

4

to suffer through it. I tried my best to be seen today." Id. ¶ 39. Approximately one-and-one-half hours later, on January 20, 2015, Plaintiff sent a text message to Supervisor Fernandez stating: "Okay Joe, my doctors [sic] office called me back. They can get me in at 2:30 tomorrow. I have to be seen. I will have the doctor provide me with a note for the days I've been out." Id. ¶ 40. Defendant terminated Plaintiff's employment on January 21, 2015, due to excessive absenteeism. DSUF ¶ 24.

**FMLA Interference**

Plaintiff has moved for summary judgment on his FMLA Interference claim, arguing no disputed facts exist. In opposition, Defendant has also moved for summary judgment as to the FMLA interference claim because: (1) Plaintiff failed to provide adequate notice to it; and (2) Plaintiff did not suffer from a "serious health condition" as defined under the FMLA. The FMLA declares it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" in the FMLA. 29 U.S.C. § 2615(a)(1). Such a claim is typically referred to as an "interference" claim, and is acknowledged to "set floors for employer conduct." Callison v. Phila, 430 F.3d 117, 119 (3d Cir. 2005). To assert an interference claim, the employee must show that he was entitled to benefits under the FMLA and that he was denied them. Id. at 119 (citing 29 U.S.C. §§ 2612(a),

5

2614(a)). To invoke rights under the FMLA, an employee must provide adequate notice to his employer about his need to take leave. 29 U.S.C. § 2612(e)(2). In doing so, the employee "need not expressly assert rights under the FMLA or even mention the FMLA." 29 C.F.R. § 825.303(b).

When the leave is unforeseeable, the employee's obligation is to "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." Id. (emphasis added). This is not a formalistic or stringent standard. Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 402 (3d Cir. 2007). "[W]here the employer does not have sufficient information about the reason for an employee's use of leave, the employer should inquire further of the employee . . . to ascertain whether leave is potentially FMLA-qualifying." 29 C.F.R. § 825.301(a). The "'critical test' is not whether the employee gave every necessary detail to determine if the FMLA applies, but 'how the information conveyed to the employer is reasonably interpreted.'" Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 303 (3d Cir. 2012).

As to Defendant's first argument, the evidence is sufficient to establish a genuine dispute as to whether Plaintiff gave adequate notice. Plaintiff advised his supervisor on January 20, 2015 that he tried to get an emergency appointment with the doctor and that he had broken out in rashes

6

all over.  One-and-one-half hours later, Plaintiff advised that he had a doctor's appointment the next day and would provide a doctor's note for the days off.  Although Plaintiff's complaints to his employer were vague and sometimes (but not always) entirely non-suggestive of any request for FMLA leave, the interpretation of all of the communications is exactly that: a matter of interpretation.  It is not appropriately resolved at summary judgment, be it through Plaintiff's motion for summary judgment or Defendant's.  See Lichtenstein, 691 F.3d at 303 ("How the employee's notice is reasonably interpreted is generally a question of fact, not law.").  As such, Plaintiff's motion for partial summary judgment is denied because he has not established his right to relief on this disputed element of his claim.

Turning to Defendant's second argument in favor of summary judgment as to this claim, under the FMLA, a "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves-- (A) inpatient care in a hospital, . . . or (B) continuing treatment by a health care provider."  29 U.S.C. § 2611(11).  A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:

> (a)  . . . A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity

> relating to the same condition, that also involves:
>
> (1) Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider, by a nurse under direct supervision of a health care provider, or by a provider of health care services . . . under orders of, or on referral by, a health care provider; or
>
> (2) Treatment by a health care provider on at least one occasion, which results in a regiment of continuing treatment under the supervision of the health care provider.
>
> . . . .

29 C.F.R. § 825.115(a)(1)-(2).

Defendant contends that there is nothing in the record to suggest that Plaintiff was incapacitated for three or more days due to his condition. Plaintiff never went to an emergency room or urgent care center to seek treatment. See generally Seigle v. Provident Mut. Life Ins. Co., 871 F. Supp. 238, 246 (E.D. Pa. 1994) (suggesting minor illnesses are not meant to be protected by the FMLA); Phinizy v. Pharmacare, 569 F. Supp. 2d 512, 522 (W.D. Pa. 2008) ("Rather, [the plaintiff] suffered from a type of minor illness lasting for a few days, which Congress sought to exclude from FMLA coverage").

Although the jury may very likely conclude that Plaintiff – who had taken January 19, 2015, off to spend time with his son and made no mention of his rash – did not suffer from a serious health condition, this is a genuine dispute of fact that cannot

8

be resolved at the summary judgment stage with the record before the Court. See generally Victorelli v. Shadyside Hosp., 128 F.3d 184, 190 (3d Cir. 1997) ("A factfinder may be able reasonably to find that [the plaintiff] suffers from something more severe than a 'minor ulcer' and as such is entitled to FMLA protection."). As such, Defendant's motion for summary judgment as to this claim is also denied.[2]

**FMLA Retaliation**

To succeed on an FMLA retaliation claim, a plaintiff must establish that: (1) he exercised his rights under the FMLA; (2) there was an adverse employment action; and (3) a causal connection exists between his protected activity and termination. See Conoshenti v. Pub. Serv. Elect. & Gas Co., 364 F.3d 135, 146 (3d Cir. 2004). If the plaintiff meets the prima facie burden, a rebuttable presumption of unlawful retaliation arises and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the plaintiff's termination. If the defendant then satisfies its burden, the burden reverts to the plaintiff to show that the proffered reason for the termination was a pretext for retaliation. See Id.

---

[2] Plaintiff's motion for partial summary judgment, had it not been denied because notice is disputed, would additionally be denied because the nature of Plaintiff's condition is disputed.

9

Although Defendant's brief purports to dispute Plaintiff's ability to establish a prima facie case, the arguments contained therein go to pretext. Def.'s Br. 7-8. Defendant contends that it terminated Plaintiff for two reasons: reliability, excessive absenteeism, and "ly[ing] to Defendant in obtaining the job in the first place." Id. As Defendant points out, Plaintiff called out of work five times within a 60-day period. Defendant also avers that Plaintiff lied to it in obtaining his job in the first place by failing to disclose his prior DUI conviction. There is nothing in the record, however, that demonstrates this fact was known to Defendant at the time of the firing. Thus, Defendant's inconsistent, after-the-fact justification (failure to disclose DUI conviction) is sufficiently inconsistent to create a genuine issue as to whether the reason given by Defendant for Plaintiff's termination was pretextual. As such, summary judgment on this ground is not appropriate.

**NJLAD Failure to Accommodate and Discrimination Claims**

With regard to Plaintiff's NJLAD claims, Defendant argues that Plaintiff is not "disabled" as defined under the NJLAD.[3]

---

[3] An amendment to the NJLAD "replaced statutory references to a 'handicap' with the term 'disability.'" Russo v. Chico's FAS, Inc., Civ. No. 10-1624 (MLC), 2011 WL 4901357, at *7, n.5 (D.N.J. Oct. 14, 2011) (citing 2003 N.J. Sess. Law Serv. Ch. 180 (Assembly 3774 (West)); State v. Dixon, 933 S.2d 978, 984 (N.J. App. Div. 2007) (noting that "handicap" as it was defined was "essentially the same" to the "disability" definition).

Under the NJLAD, a disability is defined as any "physical disability, infirmity, malformation or disfigurement which is caused by bodily injury . . . which prevents the normal exercise of any bodily or mental functions or is demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques." N.J. Stat. § 10:5-5(q). NJLAD's definition of disability is very broad and does not require that a disability restrict any major life activities to any degree. Enriquez v. West Jersey Health Systems, 342 N.J. Super. 501, 519, 777 A.2d 365 (App. Div. 2001); see also Viscik v. Fowler Equip. Co., 173 N.J. 1, 16 (2002) ("The term 'handicapped' in LAD is not restricted to 'severe' or 'immutable' disabilities and has been interpreted as significantly broader than the analogous provisions of the Americans with Disabilities Act."); Failla v. Passaic, 146 F.3d 149, 153-54 (3d Cir. 1998) (jury's conclusion that plaintiff, who suffered from a back injury, was not disabled within the meaning of the ADA was not inconsistent with its finding that he had a "handicap" under the NJLAD).

There exists a genuine issue of whether Plaintiff suffered a disability within the meaning of NJLAD. Again, although it is quite likely that a jury will conclude that Plaintiff's rash was a medical condition that did not rise to the definition of a disability within the purview of NJLAD for the reasons set forth by Defendant – the day off Plaintiff spent with his son, the

11

late dated doctor's note, and the lack of medical documentation – these are facts that must be weighed by a jury and it therefore remains a disputed material fact. Summary judgment on these claims is therefore not appropriate.[4]

**CONCLUSION**

Accordingly, for the foregoing reasons Defendant's Motion for Summary Judgment [Dkt. No. 18] and Plaintiff's Motion for Partial Summary Judgment [Dkt. No. 20] are both denied.

---

[4] Defendant's argument that Plaintiff did not suffer an adverse employment action "because" of his purported disability, but rather his absenteeism, is not meritorious at summary judgment. In addition to being made without citation to any authority and no reply briefing in response to Plaintiff's arguments, it is well-established that a request for leave of absence can be a request for accommodation under the NJLAD. Dinardo v. Medco Health Solutions, Inc., Civ. No. 14-5716, 2016 WL 2994092, *2 (D.N.J. May 24, 2016). If a disabled employee reasonably requests a leave of absence and the employer terminates him because a leave of absence runs contrary to the employer's business philosophy "where punctuality and reliability [are] paramount to the success of [the] business," the employer has failed to accommodate. Whether Plaintiff truly requested an accommodation is not an argument discussed by Defendant and, as noted, Defendant declined the opportunity to file a reply brief.

Additionally, Defendant's argument that Plaintiff was not qualified for his position because he missed work, without more – and Defendant argues nothing more – is insufficient. Defendant cites no case law to support the broad theory that solely because an employee misses work due to a disability, the employee is not qualified for the job because the broad notion of "punctuality" is important to the employer. Def.'s Br. at 10-11; Joseph v. N.J. Transit Rail Ops. Inc., 586 F. App'x 890, 892 (3d Cir. 2014) (employee must be "otherwise" qualified to perform the essential functions of the job).

                                        s/Renée Marie Bumb
                                        RENÉE MARIE BUMB
                                        UNITED STATES DISTRICT JUDGE


Dated: April 11, 2017